NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0065n.06
Filed: November 3, 2004

Nos. 03-5334

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GREGORY N. BULLARD,                          )
                                             )
                Plaintiff-Appellee,          )
                                             )   On Appeal From The United States
v.                                           )   District Court for the Western
                                             )   District of Kentucky
ALCAN ALUMINUM CORPORATION,                  )
                                             )
                Defendant-Appellant.         )

**Before:     BOGGS, Chief Judge; GUY, Circuit Judge; STEEH, District Judge.**[*]

**GEORGE C. STEEH, District Judge.** In this diversity case under Kentucky law concerning an alleged retaliatory discharge for pursuing a workers' compensation claim, defendant Alcan Aluminum Corporation appeals the district court's denials of summary judgment and judgment as a matter of law following a $370,400.00 jury verdict in favor of plaintiff Gregory Bullard, a verdict reduced by the district court to $363,984.64. Upon *de novo* review, we affirm.

**I**

Gregory Bullard began working for Alcan in 1995 as a technician whose primary responsibility was operating a forklift. Bullard's job entailed hauling remelted aluminum across a 40-acre factory, frequently driving the forklift in reverse "to save some time." Bullard began treating with chiropractor Dr. Merrill Patterson in 1996 after experiencing a stiff neck, headaches,

_____

[*] The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

and numbness in his arms and fingers. Dr. Patterson told Bullard that neck x-rays appeared normal. Bullard's symptoms nonetheless continued to get worse, and in the summer of 1999, he told a plant safety representative and a supervisor that he "was going to the doctor because I couldn't take that fork truck anymore, the headaches, the numbness and something had to be done."

Dr. Patterson x-rayed Bullard's neck a second time on August 17, 1999, telling Bullard "[y]our neck is destroyed." Dr. Patterson wrote an August 18, 1999 letter to Alcan:

> Mr. Bullard has been diagnosed with C6-C7 cervical disc degeneration deterioration producing left brachial plexus neuritis. There is extensive osteophytosis and fusing of C6-C7 vertbal [sic] bodies occuring [sic].
>
> I recommend he permanently refrain from looking back driving a tow motor at work.
>
> I further suggest no lifting over 20 lbs. for two weeks commencing today.

Bullard gave Dr. Patterson's letter to nurses at the Alcan plant, and a copy of the letter to his team leader Larry Carlisle. Bullard also told the plant nurses he was going to "make" a workers' compensation claim. According to Bullard, Alcan's nurses told him he needed a second opinion from a neurosurgeon to qualify for a permanent job restriction.

Using addresses supplied by the nurses, Bullard made an appointment with neurosurgeon Dr. Richard Berkman, who performed an MRI, and afterwards told Bullard that his neck was "destroyed by that fork truck at work." Bullard returned to the plant and told the nurses he was going to file a workers' compensation claim based on Dr. Berkman's assessment. Bullard provided Alcan with a note from Dr. Berkman on September 7, 1999, recommending that Bullard undergo neck surgery. Bullard was told by the plant nurses that "if I did not get the surgery I did not have a job." Bullard worked in a "light duty" area at Alcan from August 1999 until September 7, 1999.

Dr. Berkman performed neck surgery upon Bullard on September 23, 1999. Bullard thereafter presented supervisor Devon Harper with a note from Dr. Berkman indicating a "total disability." Bullard asked Harper for a "lighter job" working with computers in either the

2

information systems department or in accounting. The request was denied. Instead, Bullard was placed on sick-leave at full pay and benefits, and was not required to report to work. In January 2000, Harper called Bullard to inquire about a tuition benefit that was to be paid to Western Kentucky University ("WKU") for classes Bullard was scheduled to take before his neck surgery. Harper later approved Bullard's request to use the tuition money to take correspondence courses at WKU, while clarifying Alcan's general policy not to provide tuition refund benefits to employees on sick-leave because "if they are able to go to school we expect them to come to work." Harper later learned Bullard was attending classes at WKU on campus. On April 9, 2000, Bullard met with Alcan's Harper and Carlisle at the plant, where Bullard was confronted about his representations that he was taking correspondence courses at WKU. Bullard, Harper, and Carlisle met again on April 12, 2000, and Bullard was discharged. Harper told Bullard he was fired for his misrepresentations about taking correspondence courses. According to Bullard, Carlisle also told him when the two were briefly alone that "you're being fired for making a false worker's comp. claim" by claiming that the neck injuries are related to driving a forklift for Alcan. Bullard applied for workers' compensation benefits on April 26, 2000, two weeks after his discharge, and filed this federal diversity action on May 5, 2000 alleging a wrongful retaliatory discharge.

With respect to the workers' compensation claim, an administrative law judge ("ALJ") with the Kentucky Department of Workers' Claims issued an Opinion Award and Order on October 24, 2000, awarding Bullard permanent partial disability benefits of $123.75 per week for 425 weeks, and temporary total disability benefits of $440.00 per week for the period of September 8, 1999 through June 5, 2000. Bullard was also awarded Vocational Rehabilitation ("VR") benefits as a "claimant unable to perform work for which he has previous training or experience." Alcan pursued administrative and state court appeals, and on February 19, 2004, the Supreme Court of Kentucky affirmed the ALJ's award, in part, concluding there was substantial medical evidence in the record

3

to support the finding of a possibility that Bullard's medical condition was caused by his work, and that Bullard's workers' compensation claim was filed within the two-year statute of limitations period of KRS § 342.185. However, the Kentucky Supreme Court reversed that part of the ALJ's decision finding that Bullard had complied with the statutory notice requirement of KRS 342.185(1):

> The filing of this [April 26, 2000] claim eight months after Bullard first learned [by way of Dr. Patterson's August 18, 1999 letter] that his degenerative condition was work-related did not satisfy the statutory requirement to give notice "as soon as practicable." Thus, we remand this case to the ALJ for a determination of whether the employer "was mislead [sic] to his injury thereby," KRS 342.200, supra, i.e., was prejudiced by the failure to receive timely notice.

In the interim, on March 1, 2001, Alcan moved in federal district court for summary judgment of Bullard's retaliatory discharge claim, arguing that the ALJ's finding that Alcan did not receive notice of Bullard's work-related injury under KRS § 342.185(1) until Bullard filed his worker's compensation claim on April 26, 2000 collaterally estopped Bullard from attempting to prove in federal court that Alcan knew prior to Bullard's April 12, 2000 discharge that he was pursuing a workers' compensation claim. Alcan asserted it could not be held liable for an unlawful retaliatory discharge consistent with the ALJ's determination that Alcan first learned of Bullard's work-related injury claim only after Bullard had been fired. The district court denied Alcan's motion, reasoning that the notice issue was unnecessary to the ALJ's ultimate decision, which relied upon alternative grounds, and that Bullard should not be estopped from proving Alcan knew of his work-related injury before he was discharged because Bullard had no reason to appeal the ALJ's favorable decision.

Following trial in federal court, a jury returned a $370,400.00 verdict in favor of Bullard on his retaliatory discharge claim, with $250,000.00 awarded for mental anguish, embarrassment and humiliation, and $120,400.00 awarded for wages, income, and benefits lost as of the date of the February 4, 2003 verdict. Alcan thereafter moved for judgment as a matter of law, arguing that the

4

ALJ's additional finding – that Bullard was entitled to VR benefits as a "claimant unable to perform work for which he has previous training or experience" – estopped Bullard from recovering lost wage and benefit damages because Bullard could not have worked at Alcan after September 8, 1999, even if he had not been discharged. The district court denied Alcan's post-verdict motion, concluding that the ALJ's award of temporary total disability benefits for the period September 8, 1999 through June 5, 2000 evidenced that Bullard could have returned to work for Alcan, at least in some capacity, after June 5, 2000. Consistent with this reasoning, the district court reduced the jury's award of $120,400.00 for wage and benefit losses to $113,984.64, representing actual damages incurred by Bullard beginning June 6, 2000 through February 4, 2003.

## II

Bullard initially argues that Alcan waived its right to challenge the sufficiency of the evidence supporting the jury's verdict because Alcan failed to move for a directed verdict at the close of all the evidence, as required by Federal Rule of Civil Procedure 50(b). Bullard misconstrues Alcan's arguments on appeal that, despite the sufficiency of evidence offered at trial, Bullard is estopped by operation of law from proving either a retaliatory discharge, or a compensable loss of wages, income, and benefits resulting from the April 12, 2000 discharge. Alcan raised these legal issues in its motion for summary judgment and motion for judgment as a matter of law, and has not waived its right on appeal to advocate the preclusive effect of the ALJ's decision. See 9A C. Wright & A. Miller, Federal Practice and Procedure § 2540, p. 366 (2d ed.1995) (citing Warner v. Kewanee Mach. & Conveyor Co., 411 F.2d 1060, 1063 (6th Cir. 1969) for the proposition that: "If there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial").

## III

5

This court reviews a district court's disposition on a motion for summary judgment and a motion for judgment as a matter of law *de novo*. H.C. Smith Invs. v. Outboard Marine Co., 377 F.3d 645, 650 (6th Cir. 2004); Hamad v. Woodcrest Condo. Ass'n, 328 F.3d 224, 234, 236 (6th Cir. 2003). In adjudicating a motion for summary judgment, the court must view the evidence and all reasonable inferences in a light most favorable to the nonmoving party. *Id.* As a federal court sitting in diversity, this court applies the standard for a motion for judgment as a matter of law as is used in Kentucky, as state law controls. H.C. Smith Invs., 377 F.3d at 650 (citing Potti v. Duramed Pharm., Inc., 938 F.2d 641, 645 (6th Cir. 1991)). Under Kentucky law, in ruling on a motion for judgment notwithstanding the verdict, a trial court is required to consider the evidence in the light most favorable to the party opposing the motion, giving the opposing party the advantage of every fair and reasonable inference which may be drawn from the evidence. Taylor v. Kennedy, 700 S.W.2d 415, 416 (Ky. Ct. App. 1985) (citing Sutton v. Combs, 419 S.W.2d 775 (Ky. 1967)).

**A**

In determining whether the doctrine of collateral estoppel bars relitigation of an issue, this court applies the previous forum's law on collateral estoppel, here being Kentucky law. See Brindley v. Best, 192 F.3d 525, 530 (6th Cir. 1999) (citing McAdoo v. Dallas Corp., 932 F.2d 522, 524 (6th Cir. 1991)); Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 81 (1984). The essential elements for applying collateral estoppel are: (1) an identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue which the estopped party was given a full and fair opportunity to litigate; and (4) a prior losing litigant. Moore v. Kentucky, 954 S.W.2d 317, 319 (Ky. 1997) (citing Sedley v. City of West Buechel, Ky., 461 S.W.2d 556, 559 (Ky. 1970)).

In contrast, application of judicial estoppel is a matter of federal law, implicating federal policies different from those that support the doctrine of collateral estoppel. Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 & n.4 (6th Cir. 1982). Collateral estoppel prevents the relitigation of

6

factual matters that have already been considered and decided, thus preventing repetitive litigation, while judicial estoppel applies to prevent a party from asserting an inconsistent position in a subsequent proceeding. *Id*. at 598. The essential function of judicial estoppel is to protect the integrity of the judiciary as an institution by preventing intentional inconsistencies. *Id*. at 599. Consequently, judicial estoppel applies only if a party successfully asserted an inconsistent position in a prior proceeding. *Id*. at 599 (citing Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980); City of Kingsport v. Steel & Roof Structures, Inc., 500 F.2d 617, 620 (6th Cir. 1974)). Judicial estoppel is an equitable doctrine to be applied in a court's discretion, considering such factors as whether a party's later position is "clearly inconsistent" with its earlier position, whether acceptance of a party's later position would create the perception that "either the first or the second court was misled," and whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (internal citations omitted).

**B**

To apply for and receive workers' compensation benefits in Kentucky, an employee must give notice of the work-related injury to the employer, as required by KRS § 342.185(1):

> [N]o proceeding under this chapter for compensation for an injury or death shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof and unless an application for adjustment of claim for compensation with respect to the injury shall have been made with the department within two (2) years after the date of the accident . . . .

"The notice and claim shall be in writing[,] . . . shall contain the name and address of the employee, . . . shall state in ordinary language the time, place of occurrence, nature and cause of the accident, with names of witnesses, the nature and extent of the injury sustained, and the work or employment in which the employee was at the time engaged, . . . shall be signed by him or a person on his behalf," and the written "notice may include the claim." KRS § 342.190.

7

To prevail on a workers' compensation retaliatory discharge claim under Kentucky statute KRS § 342.197(1), the plaintiff must prove that he was: (1) "engaged in statutorily protected activity," (2) was discharged, and (3) "there was a connection between the protected activity and the discharge." Henderson v. Ardco, Inc., 247 F.3d 645, 654 (6th Cir. 2001) (quoting Willoughby v. GenCorp., Inc., 809 S.W.2d 858, 861 (Ky. Ct. App. 1990)). An employee may maintain a retaliatory discharge claim under KRS § 342.197 where the employer fires the employee before the employee institutes formal compensation proceedings. Overnite Transp. Co. v. Gaddis, 793 S.W.2d 129, 130 (Ky.Ct.App. 1990). "A claim is established if the plaintiff proves she 'intended to file and pursue a lawful workers' compensation claim.'" Southerland v. Hardaway Mgmt. Co., Inc., 41 F.3d 250, 256 (6th Cir. 1994) (quoting First Prop. Mgmt. Corp. v. Zarebidaki, 867 S.W.2d 185, 189 (Ky. 1994)).

> If we accept Overnite's contention, no one could proceed under KRS 342.197 unless and until an employee filed a formal claim for compensation. We do not believe that the Kentucky legislature intended such a restrictive application of the statute. Rather, the legislature's purpose in enacting KRS 342.197 was to protect persons who are entitled to benefits under the workers' compensation laws and to prevent them from being discharged for taking steps to collect such benefits. A requirement that an actual filing of a claim is the only event which would trigger the statutory protection would frustrate the legislative intent evidenced in KRS 342.197. In the face of such a requirement, an employer could, upon receipt of any notice that an employee intended to file for workers' compensation benefits, fire the claimant and avoid the consequences of KRS 342.197 entirely. Furthermore, such a requirement would result in a foot race, with the winner being determined by the event to first occur--either the firing of the employee or the filing of a claim with the Workers' Compensation Board.

Overnite Transp. Co., 793 S.W.2d at 130-131. Consequently, KRS § 342.197(1)[1] has been "construed to forbid retaliation for filing or pursuing a worker's compensation claim." Southerland, 41 F.3d at 256 (emphasis in original) (citing Overnite Transp. Co., 793 S.W.2d at 132). An

---

[1] "No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter." KRS § 342.197(1).

8

employer may be held liable under KRS § 342.197(1) for retaliatory discharge if the jury believes that the employee's pursuit of a workers' compensation claim was one of the substantial factors motivating the discharge decision, notwithstanding proof that the employee would have lawfully been discharged anyway. First Prop. Mgmt. Corp., 867 S.W.2d at 188. An employee is not entitled to recovery if the employer proves the employee was discharged "solely because of her inability to perform her job." Southerland, 41 F.3d at 256.

The ALJ's findings that Dr. Patterson's August 18, 1999 letter, as provided to Alcan, did not constitute statutory notice under KRS § 342.185(1) because the letter did not apprise Alcan that Bullard's neck injury was work-related, and that Alcan first received "actual notice" under KRS § 342.185(1) when Bullard filed his workers' compensation claim on April 26, 2000, did not adjudicate the broader issue, properly presented to the jury, of whether Bullard's April 12, 2000 discharge was substantially motivated by Bullard's previously stated intent to pursue a workers' compensation claim. Southerland, 41 F.3d at 256; First Prop. Mgmt. Corp., 867 S.W.2d at 189; Overnite Transp. Co., 793 S.W.2d at 132. Bullard was not required to provide Alcan with statutory notice under KRS § 342.185(1) prior to termination to perfect a retaliatory discharge claim under KRS § 342.197(1). Overnite Transp. Co., 793 S.W.2d at 130-31. The issues of when an employer knew that an employee intended to pursue a workers' compensation claim, and when an employer received written statutory notice under KRS § 342.185(1), are completely different. Relative to Alcan's pre-termination knowledge of Bullard's intent to pursue a workers' compensation claim, Bullard testified to the jury that he told Alcan plant nurses, a safety representative, and a supervisor well before he was discharged that he believed his neck injury was caused by driving the forklift, and that he intended to "make" a workers' compensation claim. Bullard further testified that team leader Carlisle told him the day he was discharged that "you're being fired for making a false workers' comp. claim." Construed in a light most favorable to Bullard, reasonable jurors could

9

conclude that Alcan knew prior to discharge that Bullard intended to pursue a workers' compensation claim, and relied on that knowledge as a substantial factor in firing Bullard, notwithstanding Alcan's proofs to the contrary that Bullard was discharged for misrepresentations he made relative to tuition benefits. See First Prop. Mgmt. Corp., 867 S.W.2d at 188. Whether an employer was motivated to discharge an employee for intending to file a workers' compensation claim is ultimately for the jury to decide. Willoughby, 809 S.W.2d at 862.

The Kentucky Society for Human Resources Management Council, Inc., and the Kentucky Chamber of Commerce (collectively "Kentucky SHRM") have filed an *amicus curiae* brief asserting that Kentucky employers have the right to rely on the finality and binding effect of workers' compensation adjudications, arguing, as does Alcan, that Alcan could not have fired Bullard for filing a workers' compensation claim until Alcan received "notice" that Bullard intended to file a claim. Alcan and the Kentucky SHRM incorrectly equate written statutory notice under KRS § 342.185(1) with an employer's knowledge that an employee intends to pursue a workers' compensation claim. Requiring an employer to receive statutory notice under KRS § 342.185(1) before the employer can be found to know that an employee intends to pursue a workers' compensation claim is contrary to Kentucky's broad interpretation of retaliatory discharge claims under KRS § 342.197(1). Overnite Transp. Co., 793 S.W.2d at 130-31. While the issues of whether and when an employer received statutory notice under KRS § 342.185(1) are questions of fact for the Kentucky Department of Workers' Claims to decide in adjudicating a workers' compensation claim, Eaton Axle Corp. v. Nally, 688 S.W.2d 334, 337 (Ky. 1985), it is for a jury to decide whether and when an employer knew an employee intended to pursue a workers' compensation claim, Willoughby, 809 S.W.2d at 862. The doctrine of collateral estoppel did not bar Bullard from litigating whether and when Alcan knew Bullard intended to pursue a workers' compensation claim,

10

and whether Alcan's knowledge of that intent was a substantial factor used in the decision to discharge Bullard.

## C

In adjudicating Alcan's post-verdict motion for judgment as a matter of law, the district court gave limited preclusive effect to the ALJ's finding that Bullard was entitled to temporary total disability benefits of $440.00 per week for the period of September 8, 1999 through June 5, 2000, by reducing the $120,400.00 jury award for wage and benefit losses to $113,984.64, in recognition that Bullard was not physically able to return to work until June 6, 2000. The district court explained:

> In workers compensation parlance, Mr. Bullard's temporary total disability meant that he could not return to work but had not reached maximum medical improvement from his injury. See K.R.S. § 342.0011(11)(a). His transition to permanent partial disability meant that he remained disabled but could return to work. See K.R.S. § 342.0011(11)(b). Certainly, then, Mr. Bullard could not have returned to work between his April 12 firing and June 5, 2000 even had he not been fired. After that, however, the ALJ determined that Bullard could return to work in another position. Able to work beginning June 5, Plaintiff was rightfully entitled to recover lost wages from that date until the date of trial.

Alcan reasserts the argument it advanced below, that the ALJ's additional ruling that Bullard was entitled to receive VR benefits under KRS § 342.710 as a "claimant unable to perform work for which he has previous training or experience" barred Bullard from litigating in federal court that he would have been able to return to work after his April 12, 2000 discharge, and thus barred Bullard from seeking actual damages for a retaliatory discharge. Alcan maintains that the ALJ awarded VR benefits to Bullard with respect to Bullard's permanent partial disability as opposed to his temporary total disability, thus finding that Bullard was unable to perform his previous work at Alcan for the 425 weeks Bullard was awarded permanent partial disability benefits.

The ALJ reasoned in his October 24, 2000 Opinion Award and Order:

In this case, although the plaintiff has a significant injury, it is clear that the plaintiff is a talented and intelligent individual who is young and in the process of obtaining a marketable education. Although he has some restrictions which would prevent him from returning to his past work, they are not of such a nature that would prevent the plaintiff from performing any work on a regular basis in a competitive economy. Therefore, the plaintiff is entitled to permanent partial disability benefits based upon his impairment. . . . [T]he plaintiff lacks the physical capacity to return to his past work. . . . The plaintiff has been assigned permanent restrictions by various physicians. He has not reached a level which permit [sic] a return to his past employment but his treating physician, Dr. Berkman indicated that he had reached maximum medical improvement and could return to some work as of June 5, 2000.

    . . . .

    . . . . Here, the plaintiff could clearly not return to his past work. He is attempting rehabilitation and is, in fact, enrolled as a junior in computer science. Therefore, I find K.R.S. 342.710 to be applicable and a vocational evaluation shall be ordered.

KRS § 342.710(3) provides in part:

An employee who has suffered an injury covered by this chapter shall be entitled to prompt medical rehabilitation services for whatever period of time is necessary to accomplish physical rehabilitation goals which are feasible, practical, and justifiable. When as a result of the injury he is unable to perform work for which he has previous training or experience, he shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to suitable employment.

Kentucky has adopted a two-part rule in reconciling workers' compensation benefits and jury awards for damages:

Although this is an issue of first impression in this jurisdiction, it is one which has been fully litigated in the federal system. The two-pronged rule developed by the federal courts is that (1) the employer is not liable for back pay for periods during which the employee is unavailable for work due to disability; and (2) workers' compensation benefits which represent compensation for lost wages may be deducted from a back pay award, but those which represent reparation for permanent physical injury are not deductible[.] We need not consider the first aspect of this rule, for that issue was not raised in this case. As for the second aspect, workers' compensation benefits in Kentucky are not intended as damages for injuries, but as compensation for wages lost or anticipated to be lost in the future.

Hardaway Mgmt. Co. v. Southerland, 977 S.W.2d 910, 919 (Ky. 1998) (internal citations omitted).

A Kentucky employer is entitled to credit for temporary total disability benefits paid to an employee

while the employee was unable to work, as applied against a jury award for back pay and wages lost during the identical temporary total disability period. *Id*.

The ALJ's award of VR benefits pursuant to KRS § 342.710(3) upon a finding that Bullard was unable to physically perform his previous work at Alcan did not, as a matter of Kentucky law, decide the broader issue of whether Bullard could recover actual damages proximately caused by Bullard's April 12, 2000 retaliatory termination in violation of KRS § 342.197. An employee such as Bullard who successfully litigates a retaliatory discharge claim under KRS § 342.197 is entitled "to recover the actual damages sustained by him, together with the costs of the law suit, including a reasonable fee for his attorney of record." KRS § 342.197(3). The ALJ's determination that Bullard was physically unable to perform his past job at Alcan permitted Alcan, at best, to seek a credit for the temporary total disability benefits paid to Bullard as applied against the jury's $120,400.00 award for lost wages and benefits. Hardaway Mgmt. Co., 977 S.W.2d at 919. The district court granted Alcan this relief. The ALJ's award of VR benefits compensated Bullard for lost wages and wages anticipated to be lost in the future, not for mental anguish, embarrassment and humiliation for which the jury awarded Bullard $250,000.00.

To conclude, as Alcan requests, that Bullard was collaterally estopped from seeking any actual damages for the retaliatory discharge because the ALJ determined Bullard could not physically perform his past work, would require this court to hold under Kentucky law that a jury is first required to determine whether an employee is physically able to return to his past work before awarding damages for an unlawful retaliatory discharge. Such a broad holding is not supported by Kentucky precedent or statute. Hardaway Mgmt. Co., 977 S.W.2d at 919; First Prop. Mgmt. Corp., 867 S.W.2d at 188; KRS § 342.197(3). Bullard was not given an opportunity at the workers' compensation hearing to testify, as he did in federal court, that he returned to his former job after neck surgery under "light duty," raising a legitimate inference to the jury that he could have been

13

returned to "light duty" work on and after June 6, 2000. We note that Alcan did not argue to the jury that Bullard was discharged because he could no longer physically drive the forklift. Moreover, even if Bullard's inability to drive a forklift had been raised as a legitimate reason for termination, the jury could have still returned a verdict in favor of Bullard on his retaliatory discharge claim. First Prop. Mgmt. Corp., 867 S.W.2d at 188. The doctrine of collateral estoppel did not bar Bullard from pursuing actual damages.

## D

The doctrine of judicial estoppel does not bar Bullard from recovering damages arising from his retaliatory discharge in violation of KRS § 342.197. Bullard's position before the ALJ, that he was entitled to VR benefits because he was unable to physically perform his past job at Alcan, is not "clearly inconsistent" with his position in federal court that he was entitled to an award of actual damages. New Hampshire, 532 U.S. at 750-51; Edwards, 690 F.2d at 599. Affirmance of the federal jury verdict as reconciled by the district court does not create a reasonable perception that either the ALJ or the district court was misled by Bullard. New Hampshire, 532 U.S. at 750-51. Bullard did not derive an unfair advantage, nor impose an unfair detriment upon Alcan. *Id.* Bullard did not receive a windfall or double recovery of his actual damages by operation of the reconciled verdict. Hardaway Mgmt. Co., 977 S.W.2d at 919. Of course, the Kentucky Department of Workers' Claims remains free to adjust Bullard's workers' compensation award on remand from the Kentucky Supreme Court.

## IV

For the reasons set forth above, we AFFIRM the district court's denial of Alcan's motion for summary judgment and motion for judgment as a matter of law.

14

RALPH B. GUY, JR., concurring.    I concur in the result and write separately to clarify my reasons for affirming the denial of Alcan's motion for summary judgment.  Alcan argued that the ALJ's finding concerning "actual notice" collaterally estopped plaintiff from relitigating whether Alcan had notice of the alleged work-relatedness of plaintiff's condition before he was discharged. Absent such notice, Alcan argued, plaintiff could not establish that he was discharged in retaliation for pursuing a workers' compensation claim.

Collateral estoppel, or issue preclusion, bars further litigation of an issue if the issue  is the same in both cases, the issue was actually litigated and decided in the first case, and decision on the issue was "necessary to the judgment" in the first case. *Yeoman v. Commonwealth*, 983 S.W.2d 459, 465-66 (Ky. 1998).  "Notice" was an issue in the workers' compensation case because the statute requires an employee to give written notice of an injury "as soon as practicable." KY. STAT. ANN. § 342.185(1) and § 342.190.  Alcan denied that it knew Bullard was claiming his condition was work-related.  The ALJ found both that plaintiff believed the letter conveyed the work-relatedness of his condition and that Alcan logically perceived it to indicate a non-work-related condition.  After weighing conflicting testimony about whether plaintiff told his supervisors or others that his neck condition was caused by his work, the ALJ found that:  "Actual notice to the defendant-employer occurred with the filing of the Form 101 on April 26, 2000."  In this context, and given that the finding did not rest on the lack of a writing or other statutory requirements for giving notice, I would say the issue of Alcan's notice was the same in both cases and was actually litigated and decided in the workers' compensation case.

Nonetheless, I would conclude, as did the district court, that the "notice" issue was not necessary to the judgment in the workers' compensation case because that decision rested on the

15

finding that the delay in giving notice was excusable and did not bar the workers' compensation claim. Alcan argued that this was wrong because timely notice is an absolute requirement for workers' compensation claims. In particular, Alcan relied on the decision of the Kentucky Supreme Court, issued during the pendency of this appeal, affirming in part and reversing in part the judgment in the workers' compensation case. The Court confirmed that the issue of notice can be dispositive and affirmed the ALJ's factual finding concerning actual notice, but held that plaintiff's mistaken perception concerning notice was not excusable cause for the delay. That did not end the matter, however, as the Court remanded for determination of whether Alcan was misled to its prejudice by the failure to receive timely notice. *See* KY. STAT. ANN. § 342.200 ("notice shall not be invalid or insufficient because of any inaccuracy in complying with KRS 342.190 unless it is shown that the employer was in fact misled to his injury thereby"). While the decision reopened the question of whether the delay would bar the workers' compensation claim, it did not alter the fact that the issue of actual notice was not "necessary to the judgment." In fact, this remains true as the ALJ has recently issued a decision on remand finding that Alcan was not prejudiced by the failure to receive timely notice and, therefore, plaintiff's workers' compensation claim was not barred.