RENDERED:  NOVEMBER 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0575-MR

WILLIAM WINCHESTER                                                      APPELLANT


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.           HONORABLE TIMOTHY KALTENBACH, JUDGE
ACTION NO. 20-CI-00326


THE SALVATION ARMY, A
GEORGIA CORPORATION; JOHN R.
HORTON; AND MONICA HORTON                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND JONES, JUDGES.

ACREE, JUDGE:  Appellant William Winchester was terminated from his

employment with The Salvation Army (TSA) and subsequently sued Appellees,

TSA, John Horton, and Monica Horton for wrongful termination, retaliation,

defamation, and promissory estoppel.  He appeals the McCracken Circuit Court's

April 8, 2022 Memorandum and Order granting summary judgment in favor of

Appellees.  We affirm.

## **BACKGROUND**

Appellant began working for TSA at its Paducah Corps[1] as a "Corps

Accountant" on July 9, 2014.  Appellees John and Monica Horton led the Paducah

Corps.  The Paducah Corps' operations include a church, a community center, a

food bank, and a thrift store.

The TSA's Southern Territory Employee Manual explicitly states that

all employees are at-will except for those employees with a written contract.

Section 2.2 of the manual provides:

> Employees voluntarily enter into their employment
> relationship with The Salvation Army, and accordingly are
> free to resign at any time, with or without cause or reason,
> with or without prior notice.  Similarly, The Salvation
> Army may terminate an individual's employment at any
> time, with or without cause or reason, with or without prior
> notice.  This mutual relationship is called "employment at-
> will."  In accepting or continuing employment, employees
> agree that the relationship is and always has been strictly
> voluntary and at-will on both sides.  Nothing in this
> manual, or in any other document issued by the Salvation
> Army or its representative(s), will alter this at-will
> relationship except a written contract for that express
> purpose, which is signed by both the employee and the
> Board of Trustees.

---

[1] As Appellant notes in his brief, TSA is organized using a quasi-military structure.  Its Kentucky and Tennessee division is subdivided into "corps," and each corps is typically headed by a husband and wife team.

Further, Section 15 of the manual states that "[i]n order to preserve the at-will options of the organization and each employee, it is understood that the employment relationship may be terminated with or without cause, at any time by either party." Appellant signed an acknowledgement form reflecting his understanding of the at-will nature of his employment.

Section 3.14 of the manual, titled "Whistleblower Protections[,]" states as follows:

> If an employee has knowledge of, or concern about, illegal dishonest, or fraudulent activity, the employee is to contact his/her immediate supervisor or the Human Resources Department. The Salvation Army has a policy in place to protect individuals who are considered "whistleblowers"; for more information about the protections provided to whistleblowers, please see this policy. Managers and supervisors who become aware of reports of illegal and dishonest activities and/or violations of this policy through any means are obligated to promptly report this information to their supervisor (or up the chain of command as appropriate for the circumstances) and the Human Resources Department.

Appellant claims to have witnessed the Hortons violate Kentucky law in multiple ways, including insurance fraud, fraudulent misrepresentation, theft by deception, falsification of business records, and harassment. For instance, he alleges the Hortons obtained an insurance check to make repairs after a hot water heater ruptured and flooded the church and community center but did not use the insurance funds to make repairs. He also alleges the Hortons obtained a grant for

canteen repairs and for musical instruments but used most of the grant funds for general operations. He claims John Horton regularly altered and falsified monthly financial reports that Appellant had prepared in order to conceal the true financial condition of the Paducah Corps, and that the Hortons took items donated to the thrift store and sold the items for personal profit. He also alleges that management at the thrift store helped halfway house residents smuggle stolen items into the halfway house by generating false receipts for the stolen items.

Appellant began addressing his concerns with TSA in February 2019, primarily by email. Appellant sent emails expressing his concerns to Lisa Thompson, the human resources director for the Kentucky and Tennessee division of TSA, and Sally Love, the Kentucky and Tennessee Personnel Secretary Captain.

On February 7, 2019, Appellant requested accommodations under the Americans with Disabilities Act (ADA) based on his exposure to tobacco smoke. Appellant and Thompson met in person regarding an unrelated matter and, during that meeting, Appellant informed Thompson of his concerns regarding alleged drug dealing, health and safety problems, and other issues. Thompson asked Appellant to email her a list of the issues he raised. Appellant did so. He claims he relied on the TSA Employee Manual's protections for internal whistleblowers.

Appellant alleges that, after he raised concerns with Thompson, John Horton falsely attributed errors affecting an annual audit to Appellant. The

minutes of an April 11, 2019 Advisory Board meeting reflect that John Horton discussed the status of an audit with the Board, informing board members that items on the audit's exception list were the result of coding errors in the general ledger and that none of the exceptions were major issues. Appellant believes this statement was meant to impugn his professional abilities as the Paducah Corps' accountant, despite Appellant's name not appearing in the meeting minutes.

He also alleges the Hortons lowered the "professional integrity" rating in Appellant's 2019 annual evaluation in retaliation for emailing Thompson. However, Appellees note that, because Appellant's score increased in a different category of his annual evaluation, his overall score remained the same; Appellant received a raise following his annual evaluation.

Regardless, Appellant submitted a retaliation complaint against the Hortons by email to Thompson and Love on August 2, 2019. Ultimately, TSA determined the Hortons had not violated any TSA policies. Thereafter, Thompson wrote Appellant a letter dated September 6, 2019, wherein she assured Appellant that no adverse employment action would be taken against him because of his retaliation complaint. Appellant says he made further reports after receiving the letter in reliance on Love's assurance.

Appellant claims the Hortons initiated a campaign of further retaliation against him after making his retaliation complaint. He also suspected

further financial issues with the Paducah Corps, and so he began to compile evidence of what he believed to show, among other things, falsification of business records, fraud, and misappropriation of grant funds. He claims John Horton had been altering or otherwise falsifying financial reports Appellant had created; Appellant claims he sent the next financial report to John Horton in a format that could not be altered, and that Horton made Appellant resend the report in a format that John would be able to edit.

The TSA paid for the Hortons to travel to Israel for two weeks in February of 2020. They placed the Paducah Corps' youth director in charge during their absence. Appellant claims the youth director had a problem with an employee and, after contacting John Horton about what to do, Appellant and the youth director spoke with the employee in John Horton's unlocked office. Also during the Hortons' trip, an incident occurred during a youth activity; the youth director was injured and Appellant assaulted. Appellant created an incident report; upon the Hortons' return to the country, Appellant claims John Horton insisted Appellant change his incident report to remove criticism of the Hortons, but Appellant refused to do so.

Appellant was terminated on March 23, 2020, with the stated reason being "a violation of The Salvation Army policy – Ethics and Confidentiality." He claims the reasons for his termination – that he broke into John Horton's office

while the Hortons were in Israel and that he photocopied a confidential social services client sign-in sheet – were pretextual. Appellant claims he was required to enter the office in the past and that, at least twice, the Hortons instructed him to use a screwdriver to open the locked office door. He also claims the office door was not locked while the Hortons were abroad. He also claims that, although Appellees say the sign-in sheet is confidential, it was hanging on a clipboard in a location that anybody would be able to see it.

Appellant sued TSA itself, alleging wrongful termination in violation of public policy, retaliation, and wrongful discharge and retaliation under a promissory estoppel theory. He also sued the Hortons for defamation, libel, slander, and conversion. On February 19, 2022, Appellant listed the factual allegations supporting his lawsuit in an affidavit. On April 8, 2022, the circuit court granted summary judgment on all claims except for conversion, which the parties later resolved and filed a stipulation of dismissal. Appellant now appeals.

**STANDARD OF REVIEW**

A circuit court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

-7-

law." CR[2] 56.03. "An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). Thus, appellate courts review a circuit court's grant of summary judgment motions *de novo*. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). However, "where the movant shows that the adverse party could not prevail under any circumstances" summary judgment is appropriate. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "[A] party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky. 1992) (citing *Steelvest*, 807 S.W.2d at 480).

## ANALYSIS

### I. Wrongful Termination.

Appellant first argues the circuit court erred in dismissing his public policy wrongful termination claim. He claims the circumstances of his termination exempt him from the general prohibition against wrongful termination claims brought by at-will employees. "[O]rdinarily an employer may discharge his at-will

---

[2] Kentucky Rules of Civil Procedure.

employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983) (citations omitted). This is known as the "terminable at-will" doctrine and is "a longstanding corollary to mutuality of contract." *Gryzb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985).

The Kentucky Supreme Court in *Firestone* identified three limitations on any exception to the terminable at-will doctrine. *See Firestone*, 666 S.W.2d at 731-33. The Supreme Court more clearly listed these limitations in *Gryzb*: first, "[t]he discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law"; second, "[t]hat policy must be evidenced by a constitutional or statutory provision"; and third, "[t]he decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." *Gryzb*, 700 S.W.2d at 401.

The Supreme Court in *Gryzb* determined that two – and only two – exceptions to the termination at-will doctrine exist where the "'grounds for discharging an employee are so contrary to public policy'" that a cause of action exists even without "'explicit legislative statements prohibiting the discharge.'" *Gryzb*, 700 S.W.2d at 402 (quoting *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mi. 1982)). Under the first – the refusal exception – the employee must have been discharged because he failed or refused to violate the

law while employed. *Id.* (quoting *Suchodolski*, 316 N.W.2d at 711). Under the second – the protected activity exception – the employee must have been discharged because of "'the employee's exercise of a right conferred by well-established legislative enactment.'" *Id.* (quoting *Suchodolski*, 316 N.W.2d at 711).

Further, there must be a causal connection between the employee's protected activity and his subsequent termination: "in a non-civil rights wrongful discharge case, a plaintiff must show 'at a minimum that he was engaged in a statutorily protected activity, that he was discharged, and that there was a connection between the "protected activity" and the discharge.'" *Mitchell v. Coldstream Lab'ys, Inc.*, 337 S.W.3d 642, 645 (Ky. App. 2010) (quoting *Follett v. Gateway Reg'l Health Sys., Inc.*, 229 S.W.3d 925, 929 (Ky. App. 2007)). To demonstrate a connection between a protected activity and the discharge, a plaintiff must "show the protected activity was 'a substantial and motivating factor but for which the employee would not have been discharged.'" *Follett*, 229 S.W.3d at 929 (quoting *First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993)). "As there is rarely a case where a plaintiff has a 'smoking gun' to prove improper motive, a plaintiff must frequently 'rely on circumstantial evidence and the inferences that can be drawn therefrom to make his or her case.'" *Id.* (quoting *Willoughby v. GenCorp., Inc.*, 809 S.W.2d 858, 861 (Ky. App. 1990)).

In *Follett*, we determined the circuit court erred in granting summary judgment because there were genuine questions as to whether Follett was engaged in statutorily protected activity, and as to whether this activity was a substantial and motivating factor but for which she would not have been terminated. *Id*. at 932. Follett reported to her supervisor her suspicion that a physician was under the influence of alcohol at work in or around March 2002, and cooperated with investigative efforts in April and December of that year. *Id*. at 930. Follett encouraged her staff to report suspected billing irregularities in the emergency department in or around January 2003, and Follett cooperated with subsequent investigations. *Id*. at 931.

Because KRS[3] 311.990(6) makes it a misdemeanor to impede a State Board of Medical Licensure investigator in their administration of KRS Chapter 311, and because KRS 311.595[4] empowered the Board to "suspend, limit, restrict, or revoke the medical license of a licensee who either engages in unprofessional conduct likely to harm the public, or becomes a chronic or persistent alcoholic[,]" we determined there was a genuine question of material fact as to whether Follett's communication with the investigator was a statutorily protected activity; had she

---

[3] Kentucky Revised Statutes.

[4] The United States District Court held KRS 311.595 unconstitutional in *Eubanks v. Stengel*, 28 F. Supp. 2d 1024 (W.D. Ky. 1998). Regardless, it was effective at the time *Follett* was published, and provides a helpful analogy to the present case.

-11-

not done so, she would have impeded an investigation in violation of KRS 311.990(6). *Id*. at 929-30. A further genuine question existed as to whether Follett had engaged in statutorily protected activity because KRS 205.8465(1) requires any person to report suspected violations of KRS 205.8451 *et seq.* – Kentucky's Medicaid fraud and abuse statute – and because KRS 205.8465(3) prohibits an employer from discharging an employee who, in good faith, makes a report required by KRS Chapter 205. *Id*.

In the case under review, Appellant avers in his affidavit that he refused to falsify business records – conduct proscribed by KRS 517.050 – when John Horton directed Appellant to modify an incident report to remove statements critical of the Hortons. However, KRS 517.050 states that a person is only guilty of falsifying business records where he exhibits "intent to defraud," and the circuit court concluded that the changes John Horton wanted Appellant to make would not have constituted a violation of KRS 517.050 because the statute requires such intent. We agree. Removal of references critical of the Hortons in an incident report – a document internal to TSA – would not have demonstrated an intent to defraud had Appellant actually modified the report at John Horton's direction.

Our review reveals no other instance where Appellant refused to engage in purportedly illegal activity when his employer directed him to do so. He alleges in his affidavit that grant money requested for canteen repairs and musical

instruments was spent otherwise, that insurance proceeds obtained to repair a water line were not spent on that repair, and that John Horton told Appellant he planned to obtain a grant for renovations by providing a reason other than renovations in order to more easily obtain the funds. None of these allegations demonstrate Appellant actually refused to engage in any illegal activity. Appellant also states that John Horton instructed him to provide financial reports in a format that Horton could edit; even assuming that John Horton did so in order to fraudulently misrepresent the financial state of the Paducah Corps, Appellant did, as he admits, provide the reports to Horton in an editable format. Presuming, *arguendo*, the activity was illegal, Appellant's mere observation or acquiescence in the activity will not satisfy the refusal exception.

Regarding the protected activity exception, Appellant argues the Kentucky Whistleblower Act, KRS 61.102 *et seq.*, protects him from reprisal for his internal complaints of suspected illegal or unethical actions at TSA. However, "[t]he Kentucky Whistleblower Act protects *public employees* who report perceived misconduct[,]" *Workforce Development Cabinet v. Gaines*, 276 S.W.3d 789, 791 (Ky. 2008) (emphasis added), and, therefore, does not apply to Appellant's employment with TSA. *See also Vonderhaar v. AT&T Mobility Servs., LLC*, 372 F. Supp. 3d 497 n.16 (E.D. Ky. 2019), *superseded by Vonderhaar v. AT&T Mobility Servs., LLC*, No. 2:17-CV-114 (WOB-CJS), 2019 WL 1120117,

at *1 (E.D. Ky. Mar. 11, 2019), *affirmed by Vonderhaar v. Waymire*, 797 F. App'x 981 (6th Cir. 2020) ("Vonderhaar also lacks a right of action under Kentucky's whistleblower statute because that provision only covers public employees, *see* KRS § 61.102, and the protection has not been extended to private employees."). The Kentucky Whistleblower Act is unlike the statutes in *Follett* that granted Follett access to the protected activity exception because those statutes encompassed Follett and her employment at the hospital. *See Follett*, 229 S.W.3d at 929.

Because Appellant did not engage in any protected activity or refuse to engage in conduct at the direction of his employer which would constitute a violation of the law, we need not evaluate any claimed improper motive of the Hortons. We conclude, therefore, the circuit court did not err in granting summary judgment in favor of Appellees on Appellant's wrongful termination claim.

II. Retaliation.

Second, Appellant challenges the circuit court's summary judgment as to his retaliation claim. Appellant invites us to expand the public policy exception to wrongful termination, discussed *supra*, to include retaliatory conduct other than outright termination. We decline this invitation. Further, we agree with Appellees that, because Appellant did not present this argument to the circuit court, he failed

to preserve this argument for this Court's review. Accordingly, we will not disturb the circuit court's summary judgment on this issue.

III. Defamation.

Appellant next argues the circuit court erred in granting summary judgment as to his defamation claim. According to Appellant, the Hortons made defamatory statements about him during an April 2019 meeting of the Paducah Corps' Advisory Board. During the meeting, John Horton updated the Board about an ongoing TSA audit. The meeting minutes reflect John Horton informed the Board that coding errors in the Corps' general ledger caused items to appear on the audit's exception list. He also stated that none of the cited exception items were major, and Horton never mentioned Appellant by name. Regardless, Appellant argues John Horton attributed the errors to Appellant and, therefore, impugned Appellant's skills as an accountant.

To prevail on a defamation claim, a plaintiff must establish each of four elements: "'(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'" *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (quoting RESTATEMENT (SECOND) OF TORTS § 558 (AM. L. INST. 1977)).

However, to merely imply that an individual may have erred in their job does not constitute defamation. "Speech is defamatory if it tends to '(1) bring a person into public hatred, contempt or ridicule; (2) cause[s] him to be shunned or avoided; or, (3) injure[s] him in his business or occupation.'" *Doe v. Coleman*, 436 S.W.3d 207, 210 (Ky. App. 2014) (quoting *Yancey v. Hamilton*, 786 S.W.2d 854, 858 (Ky. 1989)). As far as the minutes of the Advisory Board meeting reveal, nothing John Horton said at the meeting rises to the level of defaming Appellant, especially considering Horton noted that the issues were not major and never mentioned Appellant by name. We, therefore, find no error in the circuit court granting summary judgment on Appellant's defamation claim.

IV. Promissory Estoppel.

Finally, Appellant argues the circuit court erred in granting summary judgment on his promissory estoppel claim. Appellant asserts Appellees made multiple promises that he would not experience negative consequences for reporting perceived illegal or unethical acts. For instance, Appellant states in his affidavit that Love told him he would experience no adverse employment consequences for submitting his retaliation complaint. He also argues that the TSA Employee Manual's provisions safeguarding whistleblowers constitutes a promise that he would not suffer reprisal for his internal reports.

-16-

Under the doctrine of promissory estoppel, "'[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Meade Const. Co. v. Mansfield Com. Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979) (quoting RESTATEMENT (SECOND) CONTRACTS, § 90 (AM. L. INST. 1981)). In this case, Appellant began reporting perceived impropriety in February 2019, which was months before Love told Appellant he would not experience adverse consequences because of expressing his concerns to Thompson. Appellant says in his brief that when Appellant and Thompson met in person to discuss Appellant's ADA request and his other concerns, Appellant relied on the provisions of the TSA Employee Manual as a promise that he would not experience adverse employment effects due to his emails to Thompson or his retaliation complaint. However, we find no case law demonstrating that an employee manual can constitute a promise for the purpose of a promissory estoppel claim. This case will not be the first unless a higher court makes it so.

Thus, it cannot be said that any promise induced Appellant to act in a manner he would not have acted otherwise. Accordingly, we find no error in the circuit court's decision to grant summary judgment on Appellant's promissory estoppel claim.

## CONCLUSION

For the foregoing reasons, we affirm the McCracken Circuit Court's April 8, 2022 Memorandum and Order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William Winchester, *pro se*
Paducah, Kentucky

BRIEF FOR APPELLEES:

Megan R. U'Sellis
Louisville, Kentucky