*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DWIGHT GREGG,

UNPUBLISHED
April 20, 2023

Plaintiff-Appellant,

v

No. 361562
Genesee Circuit Court
LC No. 21-115239-CD

CREATIVE FOAM CORPORATION,

Defendant-Appellee.

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

In this action arising from employment discharge, plaintiff, Dwight Gregg, appeals as of right the order granting summary disposition in favor of defendant, Creative Foam Corporation. On appeal, plaintiff contends that he was terminated for exercising his rights to compensation for suffering a work-related injury and that he was discriminated against in light of his age and sex, and therefore, the trial court erred in dismissing his claims. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In September 2014, plaintiff obtained employment with defendant as a manufacturing supervisor. Plaintiff was 55-years old at the time of hire. He claimed that he performed his work in a satisfactory or effective manner until he suffered a work-related hand injury on June 24, 2019, that required surgical repair and placement of metal screws. Consequently, plaintiff exercised rights under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*., to obtain benefits to cover his loss of income and related medical expenses. Upon his return to work, however, plaintiff asserted that he was subjected to unnecessary warnings, discipline, and a performance improvement plan (PIP) between July 1 and November 25, 2019, "for acts and omissions for which he was not culpable." He was purportedly harassed and treated differently than "similarly younger and female supervisors." Yet, plaintiff continued to perform his work in a minimally satisfactory or effective manner and met the requirements of the PIP. Despite plaintiff's performance in an effective manner, defendant's human resources manager notified plaintiff that he was immediately terminated on January 21, 2020, without any specified reason. Plaintiff contended that his termination was "unjustified and otherwise wrongful, discriminatory,

-1-

and retaliatory action." It was further submitted that the human resources manager recognized that the termination of employment was unjustified and contrary to the WDCA, the Michigan Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., and public policy, because plaintiff was required to sign a separation agreement and release of claims in order to receive a minimal severance payment. Plaintiff raised three counts arising from his discharge: (I) retaliation for exercising rights under the WDCA and in violation of Michigan's public policy; (II) violation of ELCRA – age discrimination; and (III) violation of ELCRA – sex discrimination.

Defendant moved for summary disposition under MCR 2.116(C)(10).[1] It asserted that summary disposition was appropriate when plaintiff failed to establish a prima facie case of discrimination under the ELCRA or WDCA retaliation because defendant had a legitimate, nondiscriminatory, and nonretaliatory basis for terminating plaintiff's employment, the failure to comply with the PIP plan. Specifically, defendant alleged that plaintiff was not proficient in the company software program known as Plex, that was responsible for everything from materials management to employee attendance. It was further claimed that plaintiff did not collaborate and work cooperatively with his peers or his employees. Additionally, defendant contended that plaintiff failed to exercise a right to invoke a WDCA claim by failing to follow defendant's policy regarding treatment of injuries and by immediately seeking care from plaintiff's own physician. To support its dispositive motion, defendant submitted plaintiff's deposition testimony, plaintiff's performance reviews, the PIP, a record of plaintiff's altercation with peer Joshua Buck, employee injury logs, and documents addressing the performance of other employees.

Plaintiff opposed defendant's motion for summary disposition. He contended that the facts and inferences demonstrated that factual issues precluded summary disposition. Plaintiff claimed that defendant failed to cite to the deposition testimony of Doug Morgan, plaintiff's former supervisor, because it demonstrated that factual issues existed. Plaintiff contended he ended his existing employment to accept the offer from defendant and negotiated a salary and vacation time that exceeded the benefits of other supervisors; therefore, plaintiff's peers resented his increased benefits and refused to collaborate with plaintiff. Plaintiff received only limited on-the-job training that consisted of shadowing others. Plaintiff claimed that his performance reviews established that he met expectations, he received bonuses and raises, and he was capable of operating and closing the plant. Furthermore, plaintiff received no warnings about his performance until he raised the claim for WDCA benefits. Although plaintiff did not provide the specific ages and genders of his peers with their performance records, it was apparent to plaintiff that his injury and the different treatment of other supervisors demonstrated that he was terminated for his workplace accident. Plaintiff contended that he demonstrated a prima facie case of retaliation under the WDCA and discrimination premised on age and sex contrary to the ELCRA. Because plaintiff was treated differently than his peers, there were factual issues that precluded summary disposition.

---

[1] Defendant also moved for summary disposition under MCR 2.116(C)(7), alleging that plaintiff's claims were barred by a shortened limitations period set forth in his employment documentation. The trial court did not rule on this issue, and it is not challenged on appeal. Therefore, we do not address it.

In reply, defendant submitted that plaintiff ignored the facts that plaintiff had discipline issues before his injury, PIP, and termination. Additionally, plaintiff failed to refute defendant's nondiscriminatory reason for its discipline, PIP, and termination. Plaintiff was required to present evidence of pretext and he failed to do so. He did not demonstrate a discriminatory animus that motivated defendant. Therefore, defendant claimed entitlement to summary disposition.

The trial court granted defendant's motion for summary disposition in a written order. In addressing the retaliation claim, the trial court stated:

> Defendant alleges that Plaintiff did not validly assert a claim/right to workers'[]compensation benefits/reimbursement under Defendant's injury policy and the WDCA. More specifically, Plaintiff did not seek medical treatment for the subject injury immediately with a healthcare provider of Defendant in violation of Defendant's injury policy. Instead, he e-mailed management of Defendant roughly two-and-a-half hours later stating that he would have his hand looked at by his own provider.

> Also, Defendant alleges further that a valid assertion of rights under the WDCA by Plaintiff required him to initially treat with Defendant's choice of a provider for him for at least twenty-eight days before Plaintiff could seek treatment with a provider of his own choosing. That is, it is only after twenty-eight days from inception of medical care furnished by Defendant to Plaintiff that he could have treated with a provider of his own choice by his giving to Defendant the name of the provider and his intention to treat with same. Yet, Plaintiff never sought or accepted medical care with any provider furnished to him by Defendant nor notified Defendant of his intention to treat with a provider of his choosing before he saw the provider. Rather, Plaintiff treated with the provider within a day of the injury such that assertion by Plaintiff of his rights under the WDCA was rendered invalid/unenforceable/inoperative.

> In view of the above, the Court finds that Plaintiff failed to follow the directive of Defendant's injury policy and the WDCA for him to seek medical treatment for the injury immediately with a healthcare provider of Defendant before he treated with his own provider. In turn, the Court finds that, since Plaintiff did not assert a right afforded to him under the WDCA, then Defendant could not have retaliated against Plaintiff for his filing a claim under the WDCA.

> In further support of such finding, the Court notes that, although no production supervisors of Defendant (other than allegedly Plaintiff) sustained workers' []compensation injuries, over forty employees of Defendant did so between January 1, 2018 and December 31, 2019 (i.e., a full two-year period of time), and none of them was terminated by Defendant. And, nearly seven months elapsed between the date of the filing of the subject claim (i.e., June 27, 2019) and the termination (i.e., January 21, 2020).

The trial court also granted summary disposition of the ELCRA claim, stating:

The Court finds that there is not direct evidence here of intentional age and/or sex discrimination by Defendant against Plaintiff such that the "mixed motive" test cannot be applicable here. As such, the Court finds that Plaintiff's claim must be analyzed under the three-part "*McDonnell Douglas*[2] burden-shifting" test. In this way, Plaintiff can attempt to demonstrate such discrimination through circumstantial or indirect evidence, whereby Plaintiff can present a rebuttable *prima facie* case on the basis of proofs satisfying four elements from which a factfinder could infer that Plaintiff was a victim of unlawful age and/or sex discrimination by Defendant.

Toward that end, the Court finds that Plaintiff: 1) was a member of a protected class; 2) suffered an adverse employment action; and 3) was qualified for the position. The only remaining question as it relates to Plaintiff's attempt to establish the *prima-facie* case, then, is: 4) whether Plaintiff was terminated from his employment with Defendant under circumstances giving rise to an inference of unlawful age and/or sex discrimination by Defendant against Plaintiff. In this regard, circumstances can give rise to an inference of such discrimination where Plaintiff was treated differently than persons of a different class for the same or similar conduct. Alternatively, background information of age and/or sex discrimination and evidence of ageist and/or sexist statements and comments by Defendant can certainly be used as potent circumstantial evidence of Defendant's potential biased decision-making and existence of a discriminatory atmosphere at Defendant to, in turn, establish circumstantial evidence of individualized discrimination directed at Plaintiff. While evidence of a discriminatory atmosphere at Defendant may not be conclusive proof of discrimination by Defendant against Plaintiff, such evidence can tend to add "color" to decision-making processes and influences behind actions taken by Defendant with respect to Plaintiff.

To begin its analysis of the answer to this question, the Court notes that there appears to be no background information of age and/or sex discrimination and evidence of ageist and/or sexist statements and comments by Defendant to be used as potent circumstantial evidence of Defendant's potential biased decision-making and existence of a discriminatory atmosphere at Defendant to, in turn, establish circumstantial evidence of individualized discrimination directed at Plaintiff. Plus, Plaintiff was one of ten production supervisors employed by Defendant between 2014 and 2020, 55-years old when he was hired by Defendant in 2014, and 60-years old when he was terminated from his employment by Defendant in 2020. The Court finds that all of the production supervisors were sufficiently similarly (although not necessarily identically) situated with respect to each other as it relates to their corresponding job duties and responsibilities and being evaluated and disciplined by Defendant. The age and sex of the other nine production supervisors were, respectively, as follows: 1) 60-year-old female; 2) 48-year-old male; 3) 43-year-old female; 4) 54-year-old male; 5) 61-year-old female; 6) 58-year-old male;

---

[2] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 35 L Ed 2d 668 (1973).

7) 38-year-old male; 8) 60-year-old male; and 9) 60-year-old male. On top of that, Plaintiff's position was filled by a 54-year-old male. As can easily be seen, there were only three females of those nine . . . with four of them being in their sixties, two of them in their fifties, two of them in their forties, and only one of them in his thirties.

In contemplation of all this, the Court finds that, considering the evidence above in the light most favorable to Plaintiff, reasonable minds could not differ with each other that Plaintiff was not terminated from his employment with Defendant under circumstances giving rise to an inference of unlawful age and/or sex discrimination by Defendants against Plaintiff. In turn, the Court finds further that there is no genuine issue of material fact on this issue.

Therefore, the Court determines that Plaintiff has not established a pre-textual "*McDonnell Douglas*" type *prima-facie* case of prohibited age and/or sex discrimination against Plaintiff by Defendant. Consequently, the Court need not analyze the remaining factors of the "*McDonnell Douglas* burden-shifting" test.

Accordingly, the trial court granted defendant's dispositive motion because it found no genuine issue of material fact that plaintiff was retaliated against for filing a claim under the WDCA and no evidence of termination arising from unlawful age or sex discrimination. The trial court declined to award costs or fees to any party. From this ruling, plaintiff appeals.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

Mere conclusory allegations that are devoid of detail are insufficient to create a genuine issue of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362, 371-372; 547 NW2d 314 (1996). When an opposing party provides mere conclusions without support for its position with underlying foundation, summary disposition in favor of the moving party is proper. See *Rose v Nat'l Auction Group*, 466 Mich 453, 470; 646 NW2d 455 (2002).

## III. WDCA

Plaintiff first alleges that the trial court erred in dismissing his WDCA claim because there were genuine issues of material fact. We disagree.

-5-

The primary objective of the WDCA is to promptly provide benefits to employees that suffer an injury in the scope of their employment. *Dunbar v Dep't of Mental Health*, 197 Mich App 1, 6; 495 NW2d 152 (1992). Although the WDCA did not initially include a retaliatory-discharge cause of action, the Legislature codified such a cause of action. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 272; 826 NW2d 519 (2012). MCL 418.301(13) now provides:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

In *Cuddington*, 298 Mich App 264-265, this Court explained the application of MCL 418.301(13):

> The plain language of MCL 418.301(13) establishes that a petition for workers' compensation benefits is not a condition precedent to *all* retaliatory-discharge claims. Rather, the statute creates a cause of action when an employer terminates or otherwise discriminates against an employee in retaliation (1) for filing a complaint under the WDCA, (2) for instituting or causing a proceeding to be instituted under the WDCA, or (3) "because of the exercise by the employee . . . of a right afforded by this act." By including within the prohibitions set forth in MCL 418.301(13) that an employer may not retaliate against an employee who has exercised a protected right, the Legislature recognized that an employer could circumvent the goals of the WDCA by firing an injured employee before the employee had any opportunity to formally initiate workers' compensation proceedings. Had the statute failed to include the final alternative clause, the result would be "a foot race, with the winner being determined by the event to first occur – either the firing of the employee or the filing of a claim with the Workers' Compensation Board." *Bullard v Alcan Aluminum Corp*, 113 Fed Appx 684, 690 (CA 6, 2004) (quotation marks and citation omitted). [Emphasis in original.]

An action for wrongful discharge for filing a worker's compensation action arises from tort, not contract law. See *Phillips v Butterball Farms Co, Inc (After Second Remand)*, 448 Mich 239, 248-249; 531 NW2d 144 (1995).

The *Cuddington* Court also addressed the requirements to support a WDCA retaliation claim:

> To establish a prima facie case of retaliation under the WDCA, an employee who has suffered a work-related injury must present evidence: (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under MCL 418.315(1) were causally connected. [*Cuddington*, 298 Mich App at 275.]

-6-

Plaintiff met the first requirement by asserting a right to medical care from an injury that occurred at work at the company's expense. Secondly, defendant, as the employer, knew that plaintiff requested this care and engaged in protected conduct. Plaintiff notified human resources manager Rick Waterson and Morgan of his injury. Waterson ensured that the necessary documents were prepared. Defendant's third-party administrator for worker's compensation paid plaintiff's claims.

To establish the third requirement, plaintiff must show that defendant took employment action adverse to plaintiff. Indeed, within three months of his injury, defendant prepared a PIP, requiring plaintiff take action to correct issues in his work performance, apprised him that the failure to cure identified difficulties could result in his termination, and plaintiff was terminated in January 2020, seven months after his injury. Accordingly, plaintiff was a five-year employee who suffered an injury at work and then later incurred an adverse employment action.

The last requirement is that the adverse employment action and the employee's assertion or exercise of a right afforded under MCL 418.315(1) were causally connected. We conclude that plaintiff failed to demonstrate that there was a causal connection between his adverse employment action and the claim made to and paid by defendant through its worker's compensation administrator. That is, there was no indication that plaintiff's adverse employment action was in retaliation for the request for benefits under the WDCA. In his deposition testimony, plaintiff indicated that Waterson was upset with how plaintiff handled the injury. Plaintiff acknowledged that after he tripped, he did not leave to seek treatment from a facility designated by defendant. He explained that he contemplated the need to finish his shift and the degree of the injury. Plaintiff opted to place ice on his hand and completed his shift, underestimating that his left hand was broken. The next day, plaintiff sent an e-mail to Waterson and copied Morgan advising that he was going to seek treatment from his provider. Apparently, Waterson advised that he spent a day on the phone to ensure that plaintiff's claim was covered because of the failure to follow policy. In plaintiff's affidavit, he expressed apprehension of adverse consequences because he "messed up" defendant's "injury record."

But there was no evidence that defendant took action against plaintiff for being injured on the job and making a claim for benefits. Plaintiff did not present the deposition testimony of Waterson or any other employee injured on the job. Plaintiff did not present any evidence that after an employee suffered a workplace injury, he or she was terminated.

To support his claim under the WDCA, plaintiff cites to his testimony that Waterson complained that he spent the day on the phone to get the claim covered because plaintiff had not timely left the work site, not proceeded to the employer-approved provider, and not filled out the injury report form until June 27, 2019. Despite Waterson's complaint of having to do additional work, plaintiff was not precluded from filing the WDCA claim, and plaintiff acknowledged that his dealings about the claim were with the third-party insurance administrator. There was no testimony that Waterson interfered with plaintiff's WDCA claim or went to plaintiff's superior, Morgan, and requested that he contrive allegations against plaintiff in retaliation for filing a worker's compensation claim.

We note plaintiff filed an affidavit in opposition to defendant's motion for summary disposition. In the affidavit, plaintiff expressed that he regretted "messing up" defendant's injury record and feared that he would be fired. This affidavit expressed concerns or emotions that

-7-

plaintiff felt and did not aver that Waterson or another representative of defendant told plaintiff that a work-related injury could jeopardize his employment. Plaintiff's own personal feelings without a responding validation or correlation by defendant's representatives failed to demonstrate a connection between the injury, the WDCA request for benefits, and the adverse employment action.

Additionally, defendant submitted documentation demonstrating injuries to employees between January 2019 and December 31, 2019, and indicated that the 45 injured employees were still actively employed. Plaintiff contends that this evidence could not be considered because it was inadmissible hearsay. However, evidence offered in support of summary disposition must be admissible in content, but need not be in admissible form. See *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009); see MRE 803(6).

Plaintiff's contention that the retaliation was exhibited by the injury and the adverse employment action in light of his essentially unblemished employment record is contrary to the evidence. The testimony revealed that plaintiff did not interact well with his employees or his peers, that he failed to address shortcomings in his work performance, that he got into an altercation with another supervisor and threatened to take it "outside," and admitted that he did not participate in the PIP. Plaintiff ignored all facts that are adverse to his position.

In sum, plaintiff's deposition testimony did not demonstrate that his termination was causally connected to his workplace injury and the receipt of benefits through the WDCA. Waterson's expression of additional work and plaintiff's expression of fear did not rise to the level of demonstrating any correlation to plaintiff's termination. The trial court did not err in granting summary disposition of the WDCA claim because of the lack of a causal connection between the injury and the adverse employment action.[3]

## IV. ELCRA

Plaintiff contends that the trial court erred in granting summary disposition of his ELCRA claim. We disagree.

---

[3] We note that defendant also requested summary disposition premised on *Gjokaj v US Steel Corp*, 700 Fed Appx 494 (CA 6, 2017), contending that plaintiff failed to properly follow defendant's policy and procedure relating to treatment with defendant's medical providers, and thereby failing to invoke a right under the WDCA. The moving party must make and support its claim for summary disposition with affidavits, depositions, admissions, or other documentary evidence. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). Defendant did not present documentary evidence, through the human resources director or otherwise, of the policy regarding injuries to supervisory employees, any onsite medical clinic, and company required treatment facilities. Plaintiff testified that he underestimated the degree of his injury, placed ice on his hand, and finished his shift. He averred that a policy regarding treatment was not set "in stone." Because defendant failed to demonstrate the policy regarding injury, we decline to address this alternative ground to affirm the trial court.

The ELCRA recognizes and declares a civil right to include, "[t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status[.]" MCL 37.2102(1). The recognition of these civil rights set forth in the ELCRA are designed to eliminate the prejudices and biases held against persons because of their membership in a particular class and to dismantle the effects of offensive or demeaning stereotypes, prejudices, and biases. *Rouch World, LLC v Dep't of Civil Rights*, ___ Mich ___, ___; ___ NW2d ___ (2022), slip op at 2. An employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a).

In ELCRA cases when no direct evidence of impermissible bias is presented, a plaintiff must offer a rebuttable prima facie case[4] of discrimination. *Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001). The plaintiff must present evidence that (1) he belongs to a protected class, (2) he was subjected to adverse employment action, (3) he was qualified for the position, and (4) the job was given to another person under facts giving rise to an inference of unlawful discrimination. *Id*. at 463.

If the plaintiff successfully demonstrates the prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Dubey v Stroh Brewery Co*, 185 Mich App 561, 563; 462 NW2d 758 (1990). Once the defendant articulates a legitimate reason for its action, the plaintiff has the burden of demonstrating, by a preponderance of the evidence, that the legitimate reason offered by the defendant was merely a pretext for discrimination. *Id*.

When presenting an age discrimination claim, the plaintiff must present evidence not only of possession of qualifications comparable to the person selected for the job, but also demonstrate that age was a determining factor in the defendant's adverse action against the plaintiff. See *id*. at 564-565. When a plaintiff must present evidence of his skills and qualifications and fails to present evidence of age discrimination or age animus, he fails to create a genuine issue of material fact pertaining to the defendant's employment decision. *Id*. at 565. Additionally, the plaintiff must show that the defendant's stated legitimate, nondiscriminatory reasons are pretexts: (1) by showing the rationale had no basis in fact, (2) if there is a basis in fact, by demonstrating that they were not the actual motivating factors for the decision, or (3) by showing that the factors were insufficient to justify the decision. *Id*. at 566.

In the present case, plaintiff demonstrated that he was a 61-year-old male, a member of a protected class, subjected to adverse employment action, his termination from defendant's employ. Arguably, plaintiff was qualified for the position in light of prior supervisory experience and the fact that he held the position since 2014. However, plaintiff failed to establish that he was terminated and his job was given to a 54-year old male under facts giving rise to an inference of discrimination. *Hazle*, 464 Mich at 463. Plaintiff failed to demonstrate that any adverse

---

[4] The test arises from *McDonnell Douglas Corp*.

employment action was premised on age or sex. In his deposition, plaintiff asserted that he was treated differently than his peers. But plaintiff failed to attribute any disparity to age and gender. Rather, plaintiff acknowledged that both female supervisors had 20 years of experience with defendant in another department and their treatment may reflect their valued expertise. Additionally, plaintiff agreed that the treatment of Joshua Buck may have been more favorable because Morgan associated with Buck outside of the workplace. Plaintiff acknowledged that any perceived differential treatment was plausibly the result of factors unrelated to his age or sex.

If plaintiff had successfully demonstrated the prima facie case, the burden shifted to defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Dubey*, 185 Mich App at 563. Here, defendant alleged that it had a legitimate, nondiscriminatory reason for its action. Specifically, plaintiff had a history of failing to use the Plex system correctly and that errors in using the Plex system cost defendant. It was also alleged that plaintiff did not appropriately manage his team and did not work cooperatively with his peers. Rather, when criticized about his work performance, plaintiff responded by reciting deficiencies of other supervisors. Plaintiff's deposition testimony demonstrated that plaintiff felt wronged by his superiors when his actions were compared to other supervisors. Plaintiff seemingly surmised that this was attributed to the age and gender of others. Yet, he acknowledged that production supervisors Jennifer Turner and Cathy Allen's longstanding employment with defendant and their prior experience in other departments made them valuable assets to defendant and potentially caused Morgan to treat them more favorably. Additionally, Morgan trained Buck and socialized with Buck and Allen outside of work. Plaintiff admitted that he could not attribute different treatment of those individuals to age or sex discrimination. Thus, plaintiff failed to establish the legitimate reason offered by the defendant was merely a pretext for discrimination. *Id*.

When presenting an age discrimination claim, plaintiff had to present evidence not only of possession of qualifications comparable to the person selected for the job, but also demonstrate that age was a determining factor in the defendant's adverse action against him. See *id*. at 564-565. When a plaintiff must present evidence of his skills and qualifications and fails to present evidence of age discrimination or age animus, he fails to create a genuine issue of material fact pertaining to the defendant's employment decision. *Id*. at 565. Plaintiff failed to present any evidence comparing his employment and qualifications to his replacement, a 54-year old male. Accordingly, the trial court did not err in granting summary disposition on his ELCRA claims.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica